**ARCO ENTERPRISES, INC. Appellant,**

v.

**OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF UNITED STATES AND CANADA, LOCAL NO. 31.**

No. 04–1937.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 27, 2005.

Decided Feb. 3, 2005.

Thomas E. Weiers, Jr., Richard W. Saxe, Jr., Fluke Weiers, Pittsburgh, PA, for Appellant.

Domenic A. Bellisario, Pittsburgh, PA, for Appellee.

Before SCIRICA, Chief Judge, RENDELL and FISHER, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Appellant Arco Enterprises, Inc. ("Arco") appeals from the order of the District Court denying its motion for summary judgment, granting Appellee Operative Plasterers' and Cement Masons' International Association of United States and Canada, Local Union No. 31's ("Local 31") motion for summary judgment, and directing Arco to comply with the decision of a labor arbitration panel to pay back wages and fringe benefits. We will affirm.

Arco, a construction contractor owned by Ronald Repasky and his family, was party to a collective bargaining agreement ("CBA") with Local 31, a labor organization representing plasterers. In 2001, Re-pasky contacted Kevin Gorman and Timothy Emricko, plasterers and members of Local 31, and had them commence work on property owned by Repasky and his wife located in Greensburg, Pennsylvania. Arco had provided services to maintain the Greensburg property and on occasion stored and parked equipment there. Arco's practice had been to submit annual invoices to the Repaskys, "d/b/a D & R Industrial Center," for any work Arco performed at the Greensburg property.

In early October 2001, Repasky ordered Gorman and Emricko off the job because he was unhappy with their work. Instead of contacting Local 31 to find replacement plasterers, Repasky hired Jones Plastering, a non-union contractor, to complete the work. Repasky never informed Local 31 that he had retained Jones Plastering, and refused Local 31's request that he replace Jones Plastering with union plasterers. On November 2, 2001, Local 31 filed a grievance against Arco alleging that Arco had breached the CBA by permitting non-union contractors to perform bargaining union work.

Article II of the CBA mandates the use of a Joint Conference Committee ("JCC") to resolve grievances. Article II directs that the JCC shall be composed of an equal number of representatives selected by Arco and Local 31. The JCC convened on November 6, 2001, to hear Local 31's grievance. Among the representatives of the JCC selected by Local 31 was Emricko, one of the two original union plasterers fired by Repasky. Repasky and Arco did not object to Emricko's selection to the JCC. By a vote of 4–2, the JCC found that Arco had violated the CBA by using non-union contractors and ordered Arco to pay back wages and fringe benefits to Emricko and Gorman. Arco refused to comply with the award and filed this action in the United States District Court for the Western

District of Pennsylvania seeking to vacate the award. The District Court granted summary judgment to Local 31, denied summary judgment to Arco, and confirmed the award of back wages and benefits. This appeal followed.

We exercise plenary review of a district court's grant of summary judgment. *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.,* 343 F.3d 669, 679 (3d Cir.2003). A labor arbitrator's award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Eastern Associated Coal Corp. v. United Mine Workers of America, District 17,* 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting *Paperworkers v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). "An arbitration award draws its essence from the bargaining agreement if 'the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention.'" *United Transp. Union Local 1589 v. Suburban Transit Corp.,* 51 F.3d 376, 379–80 (3d Cir.1995) (internal quotation marks omitted). " '[A]s long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.* (citation omitted).

Arco raises several arguments on appeal. First, it contends that the JCC's decision did not "draw its essence" from the CBA because it enforced the CBA against Arco even though the decision to hire non-union labor, and the refusal to hire union labor, to perform work on the Greensburg property was not made by Arco. Arco contends that the evidence is clear that Repasky and his wife, in their individual capacities, made the decisions resulting in Local 31's grievance. As a result, Arco argues, it was reversible error for the JCC to find that Arco, as opposed to the Repaskys, had breached the CBA.

█ We disagree. The record supports the JCC's implicit finding that Arco, the Repaskys and D & R Industrial Center were essentially one and the same, and that the decision giving rise to Local 31's grievance was made by Repasky in his capacity as owner and operator of Arco. The record clearly does not support the showing necessary to surmount the high hurdle for overturning a labor arbitration award such as the JCC's.

█ Arco argues further that enforcing the JCC's decision would violate public policy because a voting member of the JCC, Emricko, was a clearly biased participant. It is true that "[a]rbitration awards rendered pursuant to collective bargaining agreements can be vacated when such awards violate public policy." *Suburban Transit,* 51 F.3d at 381 (citing *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). "However, the public policy 'must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (quoting *W.R. Grace,* 461 U.S. at 766) (citation and internal quotation marks omitted). The CBA provided for Local 31 and Arco to select equal numbers of JCC members who would "represent[ ]" their respective positions and interests. Presumably, then, each member of the JCC would be biased towards the interest of the entity which selected him or her, and any impartiality in the JCC would arise from the fact that each side got to select an equal number of representatives. *See United Steelworkers of America Local 1913 v. Union R. Co.,* 648 F.2d 905, 913 (3d Cir.1981) (citation omitted) (noting in analogous con-

text that arbitrators selected by partisan contestants in an arbitration are not intended to be "neutral"); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 679 (7th Cir.1983) ("parties ... choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen."). We therefore reject Arco's suggestion that the award violated public policy.

■ Nor may Arco now be heard to argue that Emricko's presence on the JCC amounted to "evident partiality" supporting vacatur of the JCC's award under the Federal Arbitration Act.[1] It is undisputed that Arco failed to object to Emricko's selection to serve as one of Local 31's JCC representatives even though it (Arco) had full knowledge of Emricko's identity and full opportunity to object to his selection. Arco's voluntary choice to go forward with Emricko on the JCC panel constituted a waiver of any "evident partiality" challenge to the panel. *See Kiernan v. Piper Jaffray Cos.*, 137 F.3d 588, 593 (8th Cir. 1998); *cf. Union R. Co.*, 648 F.2d at 913–14 ("When the reasons supporting an objection are known beforehand, a party may not wait to make an objection to the qualifications of a Board member until after an unfavorable award has been made.") (citation omitted).

We therefore will affirm the judgment of the District Court.

---

1. Section 10 of the Federal Arbitration Act permits an arbitration award to be vacated "[w]here there was evident partiality or corruption in the arbitrators[.]" 9 U.S.C. § 10(a).